**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
**AMERICAN FEDERATION OF**                )
**GOVERNMENT EMPLOYEES,**                )
**LOCAL 2741,** *et al.,*                             )
                                                              )
              **Plaintiffs,**                              )
                                                              )
         **v.**                                              )        **Civ. No. 09-1650 (TFH)**
                                                              )
**DISTRICT OF COLUMBIA,**                    )
                                                              )
              **Defendant.**                            )
_____)

**MEMORANDUM OPINION**

Before the Court are Plaintiffs' motion for a preliminary injunction and Defendant's

motion to dismiss.[1]  After hearing oral argument on the matter, for the reasons stated below, the

Court will grant the motion to dismiss Counts I and IV of the amended complaint, and will

decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims (Counts

II and III).

**LEGAL STANDARD**

A complaint submitted to a federal court need only set forth "a short and plain statement

of the claim showing that the pleader is entitled to relief, in order to give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

---

[1] By its Order dated September 11, 2009 (Docket No. 11), this Court denied Plaintiffs'
motion for a temporary restraining order (finding that Plaintiffs had not shown they would suffer
irreparable harm in the absence of injunctive relief, nor that their claims have a substantial
likelihood of success on the merits), and scheduled a hearing on Plaintiffs' motion for a
preliminary injunction.

550 U.S. 544, 555 (2007) (citation and quotation marks omitted).  In assessing a complaint

challenged pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must presume the

plaintiffs' factual allegations to be true and construe all reasonable factual inferences in their

favor.  *Leatherman v. Tarrant County Narcotics & Coordination Unit,* 507 U.S. 163, 164 (1993);

*Phillips v. Bureau of Prisons*, 591 F.2d 966, 968, (D.C. Cir. 1979); *see also Pearson v. District

of Columbia*, No. 08-0758, 2009 U.S. Dist. LEXIS 63556, at *2 (D.D.C. July 23, 2009).

However, "the court need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).  Nor should the court accept "a legal conclusion couched as a

factual allegation," or "naked assertions [of unlawful conduct] devoid of further factual

enhancement." *Iqbal,* ___ U.S. ___, 129 S. Ct. at 1949-50 (internal quotation marks omitted); *see

also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc.*, 525 F.3d 8, 17 n.4 (D.C. Cir. 2008)

(explaining that the court has "never accepted legal conclusions cast in the form of factual

allegations"); *cf. Herbage v. Meese*, 747 F. Supp. 60, 65 (D.D.C. 1990) ("A plaintiff's bare

conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted

for purposes of a motion to dismiss.") (internal quotation marks omitted).

   "The Court must determine whether the complaint states enough facts, as opposed to

legal conclusions,  to 'nudge [] [the] claims across the line from conceivable to plausible.'"

*Tustin v. Jayaraj*, No. 08-01034, 2009 U.S. Dist. LEXIS 46448, *3-4 (D. Conn. June 2, 2009)

(quoting *Twombly, 550 U.S. at 570*); *Ashcroft v. Iqbal,*129 S. Ct. 1937, 1949 (2009) ("To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570); *Atherton v.

District of Columbia Office of the Mayor* (D.C. Cir. 2009).  A complaint is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. When considering a motion to dismiss, a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." *Id. at 1950-51*; *Ferguson v. Local 689, Amalgamated Transit Union*, 626 F. Supp. 2d 55, 59 (D.D.C. 2009).  The Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or documents "upon which the plaintiff's complaint necessarily relies" even if the document is not produced by the plaintiff.  *Pearson,* 2009 U.S. Dist. LEXIS 63556, at *3 (citing *Hinton v. Corrections Corp. of Am.*, No. 08-778, 2009 U.S. Dist. LEXIS 49149, at *2 (D.D.C. 2009); *see also Marshall v. Honeywell Tech. Solutions, Inc*., 536 F.Supp.2d 59, 65 (D.D.C. 2008) ("[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion [to dismiss] one for summary judgment.") (internal quotation marks and citation omitted).

## BACKGROUND

The District of Columbia Department of Parks and Recreation (DPR) Office of Education Services (OES) has provided daycare and child-development services for some twenty-five years.  The District has announced and implemented plans to close at least one dozen daycare centers operated by OES.  Current or former OES employees, along with their union, the American Federation of Government Employees, Local 2741 ("AFGE" or "Local 2741") and its bargaining unit members brought this lawsuit seeking, *inter alia*, to enjoin the District from terminating some 165 positions.  Plaintiffs' claims arise under 42 U.S.C. § 1983 as well as under

D.C. law.

**ANALYSIS**

**I. COUNT I: FIFTH AMENDMENT DUE PROCESS CLAIMS**

The Court first addresses Plaintiffs' Fifth Amendment claims, brought under 42 U.S.C.

§ 1983.  Count I alleges that District officials deprived Plaintiffs' of their Fifth Amendment

rights by failing to provide employees with the process they were due when implementing a

"formally adopted policy . . . to destabilize and eliminate daycare programs operated by

DPR/OES and the jobs associated with said programs in violation of laws of the District . . . ."

Am. Compl. ¶¶ 14, 19, 37.  The policy was allegedly implemented in three parts, beginning in

2008 after "the Office of the State Superintendent for Education (OSSE) changed its funding

system for subsidized childcare programs to a reimbursement system based on daily attendance,

instead of enrollment . . . ."  Pls.' TRO Mot. Ex. 1 (Dkt. No. 3-2); Am. Compl.  ¶ 7.  "The first

prong of Defendant's offensive was to manipulate enrollment in DPR's daycare program so it

would appear that participation by affected families and children in the program was declining."

Am. Compl. ¶ 7.  District officials allegedly suppressed enrollment figures by ordering Plaintiffs

to cease accepting applications for daycare services, Pls.' Reply Br. Ex. 2 (Dkt. No. 9-2, 15-2),

and by "excluding economically disadvantaged families and individuals known to have been

waitlisted for the program."  Am. Compl.  ¶¶ 7, 10; Pls.' Mot. for Prelim. Inj. Ex. 3 (Dkt. No. 15-

4).  Next, District officials intentionally failed to apply for federal childcare block grants for

fiscal year 2010 (FY2010).  Am. Compl. ¶ 12; Reply Br. Ex. 3 (Dkt. No. 9-3) ("Ferguson

Decl.").  Finally, District officials, without consulting the D.C. Council, "reprogrammed" funds

appropriated for DPR, such that OES now lacks adequate funding.[2]  Am. Compl. ¶ 30; Pls.'

Reply Br. Ex. 11.  According to Plaintiffs, this funding shortfall was the pretext these officials

needed to eliminate OES.  Pls.' Reply Br. 7 (Dkt. No 9); Pls.' Reply Br. 6 (Dkt. No. 22).

        In April 2009, the District informed AFGE Local 2741, in general terms, of plans for a

Reduction in Force, Am. Compl. ¶ 16; Def.'s Opp'n. Mem. Ex. 2 (Dkt. No. 8-2), and began

soliciting proposals from prospective childcare service providers, Pls.' Reply Br. Ex. 12 (Dkt.

No. 10-3).  The reduction in force has come to pass, and the individual plaintiffs are now former

employees of OES whose positions were eliminated as of September 25, 2009.   Plaintiffs claim

a constitutionally protected property interest in those positions, "subject to an appropriate

process for the removal and elimination of said jobs."   Am. Compl. ¶ 38; Dkt.#13 at 11; *see*

Pls.' TRO Mot. Ex. 1, ¶ 7 ("Butler Aff.") ("Incumbent DPR employees will be allowed to

compete for similar positions in DC Public Schools but there is no guarantee of continued

employment").

        Plaintiffs contend that a failure to comply with outsourcing provisions of the Collective

Bargaining Agreement (CBA),[3] as well as applicable provisions of D.C. law, constitute a

---

        [2] In July 2009, the Acting DPR Director testified that "DPR is not able to collect
sufficient funding to cover operations of the Early Care and Education, Head Start, and Out of
School Time programs.  These programs are funded by the District's Office of the State
Superintendent of Education (OSSE) and the United Planning Organization (UPO).  It is
important to note that the decision for DPR to no longer be a direct provider of these programs is
not a judgment upon the quality of care provided by the DPR, or the quality of the staff; rather it
is a difficult, but necessary programmatic and budgetary decision."  Pls.' Reply Br. Ex. 11 (Dkt.
No. 10-3).

        [3] Curiously, despite numerous references to it, neither the District nor the Plaintiffs have
submitted a copy of the CBA as an exhibit.  The Court here assumes the CBA to have been in
force at all relevant times and that the parties quote it accurately.  The amended complaint
alleges that Article 16 of the CBA fosters a legitimate expectation of continued employment by
requiring DPR to consult with the union regarding contracting out or privatization, notify the
union sixty days in advance of "any contracting out actions which may displace any bargaining

deprivation of their due process rights.[4]  Am. Compl. ¶ 36.  The due process clause provides that

"no person shall be deprived of life, liberty, or property, without due process of law."  U.S.

Const. amend. V.  While certain property interests are protected by the Constitution, they are not

created by it. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Such interests

"are created and their dimensions are defined by existing rules or understandings that stem from

an independent source such as state law - rules or understandings that secure certain benefits and

that support claims of entitlement to those benefits." *Id.* at 577.

　　This constitutional claim depends on DPR employees having held a property interest in

their continued employment.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538

(1985) (referring to Ohio civil service statute).  Plaintiffs argue that many employees, including

some individual plaintiffs, held such an interest partly by virtue of statutory protections set forth

in the D.C. Code.  Plaintiffs point in particular to D.C. Code § 2-301.05b, which sets forth

various requirements applicable where the District seeks to procure goods or services from

private entities.[5]  Plaintiffs further argue that the employees' positions are protected by D.C.

Code §§ 47-363, 365 (concerning reprogramming requests).[6]  While these statutes may indirectly

afford some protection to District employees, they do not prescribe procedures for dismissing

---

unit employees," and "minimize displacement actions . . . ."  Am. Compl. ¶ 53; Pls.' Prelim. Inj.
Mot. 8-9 (Dkt. No. 13) (citing CBA, at 18).

　　[4] Plaintiffs' amended complaint and memorandum in opposition to the motion to dismiss
denote this claim solely as a substantive due process claim, but Plaintiffs' counsel has clarified
that both procedural and substantive due process deprivations are alleged. *See* Pls.' Reply Br. 5-6
(Dkt. No 22).

　　[5] Plaintiffs focus in particular on § 2-301.05b(d)(2), which requires new contractors to
provide displaced District employees with a limited right of first refusal in certain circumstances.

　　[6] The complaint also emphasizes the protections of the "Day Care Facility Emergency
Act of 2009," which, by Plaintiffs' own admission, was never signed into law.  Am. Compl. ¶
23.  Because it has not been enacted, the Court does not consider it to be a relevant authority.

tenured employees as do those statutes that have been held to create a legitimate expectation of continued employment.  *See, e.g. Loudermill*, 470 U.S. at 539.  Thus, the Court declines to rely on these statutes as the source of a constitutional property interest.  Certain District employees do enjoy statutory "career service" protections, however.  *See* D.C. Code § 1-608.01 (Creation of a Career Service).  Although Plaintiffs do not identify this statute as the source of a property interest, they do state that some individual Plaintiffs are "permanent District employees."  Pls. Opp'n. Br. at 6 (Dkt. No 21); *see also* Pls.' Reply Br. At 5 (Dkt. No. 22).  As such, the Court will infer, for purposes of the motion to dismiss, that at least some employees were in the Career Service.  Therefore, the Court assumes *arugendo* that such employees held a protected property interest in their jobs.  *Cf. McManus v. District of Columbia*, 530 F. Supp. 2d 46, 72 (D.D.C. 2007).

A. Procedural Due Process

Plaintiffs' procedural due process claim nevertheless fails because they do not allege facts that suggest they were deprived of any process due to them.  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Loudermill,* 470 U.S. at 542 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *see also Pearson* 2009 U.S. Dist. LEXIS 63556, at *58 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Plaintiffs do not claim that the procedures set forth in the CBA, including arbitration, fail to comport with this requirement.  At oral argument, Plaintiffs' counsel explained only that an arbitrator cannot provide injunctive relief and that the arbitration procedure would be too lengthy to provide adequate relief.  Nor do they contend that the procedure used by the District was inconsistent the Career Service statute.  Indeed, although they argue that the union was not notified of

*privatization* plans, they do not deny that the union received timely notice of the RIF.[7]

Therefore, Plaintiffs cannot plausibly claim to have been deprived of due process, particularly

where they have failed to fully take advantage of the process afforded to them by the CBA's

grievance procedures.  *Cf. Yates v. District of Columbia*, 324 F.3d 724, 726 (D.C. Cir. 2003).

Even assuming the District's actions have run awry of the privatization or reprogramming

statutes, however, such violations do not amount to a constitutional violation.  "A mere violation

of law does not give rise to a due process claim."  *AFGE, AFL-CIO, Local 446 v. Nicholson*, 475

F.3d 341, 353 (D.C. Cir. 2007); *cf. Duckett v. Quick*, 282 F.3d 844, 848 (D.C. Cir. 2002).

B. Substantive Due Process

Although the loss of employment, in any circumstances, is a serious and potentially

tragic matter, Plaintiffs' substantive due process claim must also fail because the conduct alleged

does not meet the threshold for such a violation.  The "threshold question is whether the behavior

. . . [was] so egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (no substantive due process

violation where police officer causes death through deliberate or reckless indifference to life in a

high-speed car chase aimed at apprehending a suspect).  While the measure of what is

conscience-shocking is no calibrated yard stick, it does, as Judge Friendly put it, "point the way."

*Id.* at 847 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  The conduct alleged

simply does not meet this high threshold, despite the amended complaint's characterization of

the District's actions as "arbitrary" and in violation of D.C. law.  *Cf. Barwood, Inc. v. District of*

*Columbia*, 202 F.3d 290, 294 (D.C. Cir. 2000); *Committee of U.S. Citizens Living in Nicaragua*

---

[7] The allegations and exhibits indicate that the District provided AFGE with advance notice of the reduction in force, pursuant to the CBA.  Am. Compl. ¶ 16; Def.'s Opp'n. to TRO Mot. Ex. 2 (Dkt. No. 8-3).

*v. Reagan*, 859 F.2d 929, 944 (D.C. Cir. 1988) ("the fact of a state law violation does not resolve

whether a plaintiff has been deprived of due process"); *Archie v. City of Racine*, 847 F.2d 1211,

1217 (7th Cir. 1988) (en banc) ("A state ought to follow its law, but to treat a violation of state

law as a violation of the Constitution is to make the federal government the enforcer of state law.

State rather than federal courts are the appropriate institutions to enforce state rules").

Furthermore, "in substantive due process cases . . . courts have consistently held that 'there is no

fundamental right to government employment.'" *McManus v. District of Columbia*, 530 F.

Supp. 2d 46, 71 (D.D.C. 2007) (citations omitted).

Mindful of the Supreme Court's admonition not to permit the Due Process Clause to

"transform every tort committed by a state actor into a constitutional violation," *DeShaney v.

Winnebago County Dep't of Social Services*, 489 U.S. 189, 202 (1989), this Court finds that

Plaintiffs have failed to state any plausible claim for relief under the due process clause.

## II. COUNT IV: IMPAIRMENT OF CONTRACT

Plaintiff AFGE alone alleges that the District has violated the contract clause by

impairing "the obligations set forth in the CBA . . . ." Am. Compl. ¶61.  The contract clause

states: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."  U.S.

Const. Art. 1, sec. 10.  It proscribes *legislation* that impairs contractual obligations.  *Barrows v.

Jackson,* 346 U.S. 249, 260 (1953).  What AFGE alleges here is merely breach of contract, not a

legislative impairment in violation of the contract clause.  *Cf. Horwitz-Matthews, Inc. v. City of

Chicago*, 78 F.3d 1248, 1250 (7th Cir. Ill. 1996) ("It would be absurd to turn every breach of

contract by a state or municipality into a violation of the federal Constitution").  Regardless,

AFGE has failed to respond Defendant's argument in favor of dismissal of this claim.  *See.* Pls.'

Opp'n. Mem. (Dkt. No. 21).  The Court will therefore dismiss this claim as conceded.  *See

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003);

*Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002);

*Pearson,* 2009 U.S. Dist. LEXIS 63556, at *57 n21.


**III. SUPPLEMENTAL JURISDICTION**: **COUNTS II and III**

        For the reasons set forth above, the Court finds that the facts alleged, taken in the light

most favorable to Plaintiffs, fail to state any Constitutional violation by the District.  As such,

the Court must GRANT the District's motion with regard to Counts I and IV of the amended

complaint.  *Pearson,* 2009 U.S. Dist. LEXIS 63556, at *26 ("If 'no constitutional right would

have been violated were the allegations established,' the court must grant the motion to

dismiss.") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

        A federal court has jurisdiction over substantial federal claims, along with local law

claims that are part of a common nucleus of operative fact.  After the federal question claims

upon which a court's original jurisdiction is based have been dismissed, the court must decide

whether to exercise supplemental jurisdiction over the remaining local law claims. *See* 28

U.S.C. § 1367(c)(3); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260,

1265-66 (D.C. Cir. 1995).  As the Court of Appeals for the District of Columbia Circuit has

explained:

> A necessary condition for the exercise of supplemental jurisdiction is the
> substantiality of the federal claims.  If the federal claims are obviously
> frivolous or so attenuated and unsubstantial as to be absolutely devoid of
> merit,, a federal court lacks subject-matter jurisdiction over those claims and,
> consequently, any local law claims.

*Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 362 (D.C. Cir. 2007) (internal

quotation marks and citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715,

726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and

to promote justice between the parties, by procuring for them a surer-footed reading of

applicable law. Certainly, if the federal claims are dismissed before trial, . . . the state claims

should be dismissed as well").  In light of the insubstantial nature of Plaintiffs' constitutional

claims, the Court sees no reason to retain jurisdiction over the remaining claims under D.C. law

(Counts II and III).[8]

**CONCLUSION**

    For the foregoing reasons, the Court will GRANT the District's motion to dismiss Counts I

and IV.  The court will not exercise supplemental jurisdiction over and therefore dismisses

Counts II and III without prejudice.  Therefore, Plaintiffs' motion for preliminary injunctive

relief must also be DENIED.

    An appropriate order accompanies this memorandum opinion.


October 26, 2009

*/s/ Thomas F. Hogan*
Thomas F. Hogan
U.S. District Judge

---

    [8]Because the Court finds Plaintiffs' federal claims to be insubstantial, Plaintiffs cannot establish a substantial likelihood of success on the  merits.  As such, the Court must deny Plaintiffs' motion for preliminary injunctive relief. *See Pearson,* 2009 U.S. Dist. LEXIS 63556, at *66 n26 (citing *American Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)).